```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JUSTIN L. HALDEMAN              :       CIVIL ACTION
                                :
          v.                    :
                                :
LANCASTER COUNTY PRISON,        :
et al.                          :       NO. 12-6513
```

MEMORANDUM

McLaughlin, J.                                    January 9, 2015

This lawsuit arises from a confrontation between the plaintiff Justin Haldeman and the defendant Sgt. Robert Wolfe and other correctional officers while Haldeman was incarcerated at the defendant Lancaster County Prison.[1] Haldeman filed suit under 42 U.S.C. § 1983, claiming that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by using excessive force against Haldeman during the confrontation and failing to provide adequate medical treatment following the confrontation.

Sgt. Wolfe and Lancaster County Prison have filed a motion for summary judgment, arguing that the force used to subdue Haldeman was reasonable under the circumstances and that Haldeman received prompt and adequate medical care. The motion

---

[1] Because the plaintiff is pro se, the Court considers both the plaintiff's arguments and any available arguments in his favor.

for summary judgment is granted, and judgment is entered against the plaintiff.

I.  Summary Judgment Record[2]

On September 14, 2012, Haldeman was a state inmate housed at Lancaster County Prison.  On that date, Haldeman was informed that he was placed on MRSA status because of an ingrown toenail.  This agitated Haldeman, who had never been on MRSA status before and was worried about the seriousness of the disease.  He wanted to talk to a correctional officer about his new status to alleviate some of his concerns.  Haldeman Dep. 18:20-22, 19:20-20:12, 37:1-6.

Unfortunately, another inmate was causing a disturbance at that time, which attracted the attention of most of the correctional officers in the area.  Haldeman was therefore unable to talk to an officer about his MRSA status.  This, combined with his agitation over the illness, caused him to start "freaking out."  At the time he started "freaking out," Haldeman was locked in his cell.  Haldeman Dep. 21:8-25, 22:17-23:6, 37:17-25, 52:2-53:5.

---

[2]  On a motion for summary judgment, the Court considers the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).  The facts set forward herein are undisputed.

In his agitated state, Haldeman decided that, rather than die a slow death at the hands of MRSA, he would end his own life quickly. He fashioned a makeshift knife from his prison-issued eyeglasses and began stabbing himself. Haldeman Dep. 23:17-24:6, 55:15-56:3; Defs.' Mot. Ex. D.

Correctional Officer Achey noticed Haldeman harming himself and asked Haldeman to stop stabbing himself and turn over the weapon. Haldeman repeatedly refused in aggressive, vulgar terms. Haldeman Dep. 24:7-20, 47:19-48:19.

Achey called Sgt. Wolfe over to Haldeman's cell for assistance. Sgt. Wolfe asked Haldeman to drop his weapon, come to the cell door, and talk to Sgt. Wolfe. Again, Haldeman repeatedly refused Sgt. Wolfe's requests in aggressive, vulgar terms. Haldeman Dep. 25:2-26:4, 49:15-51:3.

Sgt. Wolfe told Haldeman that he had one more chance to drop his weapon, come over to the cell door, and allow himself to be handcuffed. Haldeman again refused to submit, and continued stabbing himself. Haldeman Dep. 26:5-12, 51:15-52:1.

Sgt. Wolfe then put the barrel of a pepper ball gun through an opening in the cell door and shot at Haldeman. The pepper ball gun shot non-lethal rounds laced with mace. Haldeman was hit in the head, neck, and arm. Haldeman Dep. 27:9-17, 56:13-17.

After shooting several pepper ball rounds at Haldeman, Sgt. Wolfe paused and asked Haldeman to drop his weapon, come to the door, and cuff up. Haldeman refused, and continued stabbing himself. Haldeman Dep. 57:15-23.

Sgt. Wolfe resumed shooting pepper ball rounds at Haldeman. Haldeman continued to defy the officers' orders to submit, and used his mattress to block the pepper ball rounds. Sgt. Wolfe again asked Haldeman to drop his weapon and cuff up, and again Haldeman refused. Haldeman Dep. 27:18-28:3, 59:21-61:6.

Eventually, the officers switched from the pepper ball gun to pepper spray. They sprayed pepper spray into Haldeman's cell, and then asked him to cease resisting and cuff up. Haldeman refused, so the officers sprayed more pepper spray into his cell. After the second round of spray, Haldeman told the officers he would cease resisting and allow himself to be handcuffed. As soon as he indicated that he was giving up and was coming to cuff up, the officers stopping spraying into Haldeman's cell. Haldeman Dep. 28:14-29:8, 61:10-63:23.

After Haldeman submitted to the officers, he was taken to the showers to rinse off any pepper spray residue that remained on his skin. He was then taken to a new cell, and secured to a bunk by a four-point harness. A nurse checked on

Haldeman every fifteen minutes, and he told her about his injuries.  Haldeman Dep. 32:13-21, 66:7-67:13.

Haldeman suffered multiple self-inflicted puncture wounds and scratches on his legs, chest, and stomach.  He also suffered a welt or scrape on his head from a pepper ball round, and his arms and chest were reddened and burned from the spray.  The welt was treated with hydrocortisone cream, and the burns were untreated.  Haldeman Dep. 32:19-21, 68:17-70:15.

II.  Summary Judgment Standard

Under Fed. R. Civ. P. 56, a party moving for summary judgment must show that there is no genuine issue as to any material fact and that judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  Id. at 247-48.

III. Discussion

    A.    Excessive Force Claim

The Eighth Amendment's prohibition against "cruel and unusual punishment" in the prison setting protects against the "'unnecessary and wanton infliction of pain.'"  Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  Under the Eighth Amendment, prison officials are found to have used excessive force if the use of force was applied "maliciously and sadistically to cause harm," rather than "in a good faith effort to maintain or restore discipline."  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

In deciding whether force was applied maliciously and sadistically to cause harm, a court should consider:  (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates; and (5) any efforts made to temper the severity of a forceful response.  Whitley, 475 U.S. at 321.

Haldeman claims that the officers' use of the pepper ball gun and pepper spray constituted excessive force.  An analysis of the Whitley factors shows that the officers' use of force was "a good faith effort to maintain or restore

6

discipline," rather than an attempt to "maliciously and sadistically" cause harm.  <u>Wilkins</u>, 559 U.S. at 37.

There was a need to apply force.  Haldeman brandished a weapon in an enclosed space, and repeatedly refused to stop hurting himself, turn over the weapon, and cuff up.  The officers made several attempts to calm Haldeman down before resorting to the use of force, to no avail.  There was therefore a need to use force in order to subdue Haldeman and protect both Haldeman's and the correctional officers' safety.  The amount of force was also proportional to the need to use force – as soon as Haldeman stopped resisting, the officers ceased using force.

Haldeman also suffered only minor injuries as a result of the force used by the officers – a welt or scrape on his head from a pepper ball round and reddened, burned skin from the pepper spray.  Indeed, the most serious injuries Haldeman suffered from the incident were self-inflicted – the numerous puncture wounds and scrapes from Haldeman's use of his makeshift weapon.

Haldeman posed a serious threat to staff and inmates.  He was already inflicting harm upon himself with the makeshift weapon.  It is likely that Haldeman would also have attempted to harm any officers that tried to enter the cell and disarm Haldeman.

The officers attempted to temper the severity of the harm caused to Haldeman by providing numerous opportunities for Haldeman to surrender peaceably before shooting more pepper ball rounds or pepper spray into his cell. Haldeman repeatedly refused to surrender peaceably when given the opportunity.

The undisputed facts show that the force used by the correctional officers was not applied "maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37. Rather, the force was applied in a "good faith effort to maintain or restore discipline." Id. Summary judgment for the defendants is therefore granted as to Haldeman's Eighth Amendment excessive force claim.

B.  Failure to Provide Adequate Medical Treatment Claim

Haldeman also claims that the defendants violated his Eighth Amendment rights by failing to provide adequate medical treatment following the confrontation. To succeed on this claim, Haldeman must show (1) deliberate indifference to his medical needs on the part of the prison officials; and (2) that his medical needs were serious. Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004) (quoting Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) ("MCCII")).

To act with deliberate indifference is to "recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). Deliberate indifference has been shown in a variety of circumstances, "including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

For the second prong, a medical need is "serious" if "it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." MCCII, 834 F.2d at 347 (quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J. 1979)). Additionally, "the seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. . . . [W]here denial

9

or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id.

The undisputed facts show that prison officials were not deliberately indifferent to Haldeman's medical needs. Following the confrontation, Haldeman was allowed to shower in order to rinse off any remaining spray residue. He was then secured to a bunk and seen by a nurse every fifteen minutes. The nurse treated the welt on his head with hydrocortisone. Medical treatment was not intentionally or recklessly denied or delayed.

Haldeman argues that his skin burns were not treated adequately because "they didn't feel it was needed to take care of it." Tr. of Telephone Conference 10:9-14, Dec. 19, 2013 (Docket No. 31). This argument does not suggest that any medical treatment was intentionally withheld, but rather that prison medical personnel made a mistake in treating Haldeman's skin burns. A mistake in treatment is not sufficient to support an Eighth Amendment claim in this context; a claim that medical personnel negligently treated a condition is not an Eighth Amendment violation. Estelle, 429 U.S. at 106. Haldeman cannot recover even if he is correct that his skin burns were mistreated. Summary judgment is therefore granted to the defendants on Haldeman's Eighth Amendment failure to provide medical care claim as well.

An appropriate order shall issue.